UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARK BRODLEY,<br>    Plaintiff | )<br>)<br>) | CIVIL ACTION NO.: 04-11420-PBS |
| v. | )<br>) | |
| MASHPEE NECK MARINA, INC.<br>    Defendant | )<br>) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT MASHPEE NECK MARINA, INC.'S MOTION TO DISMISS**

**I. INTRODUCTION**

Mark Broadley ("Broadley"), the plaintiff in this case, suffered a trimalleolar fracture of his left ankle when it became caught in a gap between two floating docks adjacent to where his vessel was moored. The gap was caused in part by a wave from an unidentified passing vessel. Broadley filed a claim for his injuries against the owner of the dock, Mashpee Neck Marina, Inc. ("Marina"). Marina denied the claim, citing an exculpatory clause in the mooring contract Broadley signed when he leased the mooring space. Broadley filed suit in this court for declaratory relief as to the contract, and for negligence. In lieu of filing an answer, the Marina has moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

The plaintiff opposes the defendant's Rule 12(b)(1) motion and asserts that this court has subject matter jurisdiction for three reasons. First, admiralty jurisdiction is properly invoked because this court is being asked to determine the rights and liabilities of the parties under a

1

mooring contract, which all authorities agree is a maritime contract.  Second, the underlying claim is a maritime tort, as the Admiralty Extension Act, 46 U.S.C. § 740, extends admiralty jurisdiction to all cases of damage or injury to persons or property caused by a vessel on navigable water, even though the damage is consummated on land.  Finally, assuming *arguendo* that the negligence claim is not a maritime tort, this court may hear the claim under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### I.  **RELEVANT FACTS**

On August 25, 2002, Mark Broadley was injured when his foot became stuck in a large gap between the main dock and a floating dock to which his boat was moored.  The gap between the docks, normally two to three inches, was enlarged due to wave action from a passing boat. *See* **Affidavit of Mark Broadley**, attached as **Exhibit A**.  The wave caused the floating docks to undulate.  In his complaint, Mr. Broadley alleged that the defendant's negligence was the cause of the accident: a gap of this nature between the floating docks is unnecessary, unreasonable, and a potential hazard that could have been easily rectified.

As a prerequisite to leasing the mooring on the floating dock where the injury occurred, Broadley was required to enter into a contract.  The contract contained various clauses setting out the respective rights and duties of the Marina and Mr. Broadley.  It also contained a series of clauses limiting the liability of the Marina for injuries suffered by Mr. Broadley to his person or property.  Specifically, Paragraph 35 of the contract provides that:

> The OWNER [Mr. Broadley] warrants and convents that neither the OWNER, the Vessel, nor anyone in privity with either, will make any claims, demands, causes of action of any kind and nature, or obtain or enforce any judgments, executions or levies thereon, directly or indirectly (including subrogation matters), against MARINA, its officers, directors, agents, servants, or its employees, arising out of

any damage, loss, personal injury or death suffered by them or those in privity with them or any damage, loss, personal injury or death suffered by other owners, vessels, or persons in privity with them, for which third party claims might otherwise be raised against MARINA, etc. The OWNER and Vessel agree and covenant that they will defend, indemnify and save MARINA harmless from any and all of such claims, demands, causes of action, judgments and executions, and the MARINA shall be entitled to responsible attorneys fees in the event of breach of the OWNER'S covenant hereunder.

*See* **Dockage/Mooring Contract Rules and Regulations**, attached as **Exhibit B**. In the Complaint, plaintiff alleges that this clause is overbroad, unconscionable, against public policy and otherwise not enforceable.

## II.  LAW AND ARGUMENT

### A.  This Court has Jurisdiction Under 28 U.S.C. § 1333(1) Because the Contract at Issue in Count I is a Marine Contract

The contract between Mr. Broadley and the Marina is a maritime contract which falls within admiralty jurisdiction. In order to determine if a contract is maritime in nature, the court must look to the subject matter of the contract. *See* Exxon Corporation v. Central Gulf Lines, Inc., 500 U.S. 603, 611-12 (1991). Courts have repeatedly upheld mooring or wharfage contracts such as the one signed by Broadley to be maritime contracts which fall within admiralty jurisdiction. *See* Goodman v. 1973 26 Foot Trojan Vessel, 859 F.2d 71, 73 (8th Cir. 1988) ("Contracts, such as this one, providing wharfage to a particular vessel are maritime."); American Eastern Development Corp. v. Everglades Marina, Inc., 608 F.2d 123, 124-25 (5th Cir. 1979) (contract to take recreational boat in and out of the water is an alternative to mooring and thus a maritime contract). "Generally, contracts to provide services or supplies to a vessel are within admiralty jurisdiction." Goodman, 859 F.2d at 73. Additionally, contracts for other types of storage have been upheld. *See* Medema v. Gombo's Marina Corp., 97 F.R.D. 15, 16 (N.D.Ill. 1982) (contract to store a boat for the winter season falls within admiralty jurisdiction); Selame

Associates, Inc. v. Holiday Inns, Inc., 451 F. Supp. 412, 418 (D. Mass. 1978) (contract to moor and care for a vessel falls within admiralty jurisdiction). According to a leading admiralty treatise, the list of contracts that invoke admiralty jurisdiction are well established. *See* Schoenbaum, Thomas J., ADMIRALTY AND MARITIME LAW § 1-10 (4th ed. 2001). The list includes wharfage agreements, as well as contracts to furnish services or supplies, contracts for the carriage of goods or passengers, stevedoring, and vessel storage contracts. *See id.*

**B.   The Marina's Negligence Comes Within Admiralty Jurisdiction as a Maritime Tort**

For a tort to sound in admiralty it must satisfy a two-part test: 1) the location of the tort must occur on or over navigable waters (or the matter complained of must occur on or over the navigable waters with the damage manifested on land); and 2) the tort must have a connection to traditional maritime activity. *See* Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249, 255 (1972); Foremost Ins. Co. v. Richardson, 457 U.S. 358, 675 (1982); Sisson v. Ruby, 497 U.S. 358 (1990); Jerome B. Grubart, Inc. v. Great Lakes Dredge and Dock Co., 513 U.S. 527, 534 (1995).

1.   The Locality Prong

Traditionally, locus was the focus: torts had to occur on navigable waters in order to satisfy the locality prong of the admiralty jurisdiction test. Congress modified this rule in 1948 by enacting the Admiralty Extension Act, codified at 46 U.S.C. § 740. The Admiralty Extension Act provides that "admiralty and maritime jurisdiction ... shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, **notwithstanding that such damage or injury be done or consummated on land.**" 46 U.S.C. § 740 (emphasis added). Accordingly, Broadley's claim of admiralty jurisdiction does not "sink" merely because

4

the floating pier where his incident happened may be considered an extension of land. The Act does not create a new cause of action, but merely provides jurisdiction for an already existing cause of action. See U.S. v. Matson Nav. Co., 201 F.2d 610, 617-18 (9th Cir. 1953).

It is not necessary to sue the offending vessel for the Admiralty Extension Act to apply. In Fematt v. City of Los Angeles, the plaintiff was permitted to bring suit against a third party, the City, where the City was hired to unload a vessel. 196 F. Supp. 89 (S.D. Cal. 1961). The line from the vessel was the direct cause of the injury, but negligence on behalf of the city was a proximate cause. Fematt, 196 F. Supp. at 93. The city contended that Admiralty Extension Act did not apply so as to allow admiralty jurisdiction. See id. The court found that "[n]o authority either in the case law or in the legislative history of the Act" supports the city's proposition. Id. Since the claim was brought in negligence and the instrumentality of the injury was the vessel, the court found admiralty jurisdiction. See id. "Congress has said that the suit may be brought in personam, and since it has nowhere said that the tortfeasor must be the owner of the vessel, the applicability of the Act to the instant case is not open to doubt." Id. In Gebhard v. S.S. Hawaiian Legislator, the court found that the Admiralty Extension Act gives jurisdiction over "all cases" that are "caused by a vessel on navigable water." 425 F.2d 1303, 1306 (9th Cir. 1970). This jurisdiction is not restricted to the persons responsible for the vessel and its torts, but extends to all claims arising out of a vessel-caused injury. See id. Jurisdiction is not based on the character of the parties but on the facts giving rise to the cause of action. See Gebhard, 425 F.2d at 1306.

2. Connection to Traditional Maritime Activity

The second prong of the test is the nexus or connection of the tort to traditional maritime activity. See Executive Jet Aviation, Inc, 409 U.S. at 269-70. Two issues must be satisfied in

5

order to meet the connection test. Sisson v. Ruby, 497 U.S. 358, 363 (1990). First the court must "assess the general features of the type of incident involved" in order to determine if it is potentially disruptive of maritime activities. *Id.* Next, the court must determine whether the incident has a "substantial relationship to traditional maritime activity." *Id.* at 365.

In Sisson the Supreme Court found that these factors were not only met where a vessel was in navigation, but extended "at least to any other activities traditionally undertaken by vessels, commercial or non-commercial." *Id.* Applying this to the present case, the incident (Mr. Broadley's injury) at issue occurred during the actual use of the vessel (ingress and egress to the vessel via the floating dock). This would seem to satisfy the first part of the Sisson test in that the boarding and debarking of a vessel is directly related to maritime activity. Accidents on the docks related to the actions of vessels on navigable water can disrupt maritime commerce by closing or slowing the use of the docks.

Next, it must be shown that this activity has a substantial relationship to traditional maritime activity. The safe mooring, storage, boarding, and debarking of a vessel meets this test. Based on this, the nexus prong is clearly met.

C. **Supplemental Jurisdiction Over the Tort Claim**

Even if this court were to find that the tort claim does not solely sound in admiralty, this court may hear the claim under supplemental jurisdiction. Under 28 U.S.C. § 1367, federal courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367 (2003). Because the mooring contract that this court is being asked to interpret in Count I is a maritime in nature, this court may extend supplemental jurisdiction to the tort claim which arises out of the same transaction.

The objective of § 1367 in grouping claims where a federal court has original jurisdiction over one claim but not others arising out of the same facts or circumstances is fairness and judicial efficiency. *See* Ponce Federal Bank, F.S.B. v. Vessel Lady Abby, 980 F.2d 56, 58 (1st Cir. 1992). In order for supplemental jurisdiction to exist, the claims must come from the same nucleus of operative facts. *See id.* at 57-59. The test is whether when the claims are "considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966) (emphasis in original); *see also* Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) ("Claims are part of the same constitutional case if they 'derive from a common nucleus of operative fact,' and 'are such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding'").

Count I seeks declaratory relief from the contract, and Count II seeks negligence damages against the Marina. These arise from the same common nucleus of operative fact. Broadley was injured through his use of the Marina's floating dock. The contract that he seeks to invalidate in Count I was entered into for the use of the dock, the Marina's facilities, and a mooring space for his boat. The tort claim alleges that the Marina was negligent in installing, maintaining, and/or providing warnings in connection with the floating docks that Mr. Broadley had contracted to use. The claims should be brought "in one judicial proceeding" as specified above because a single court can determine the validity of the contract's exculpatory clauses and then rule on the related injury claims.

7

## CONCLUSION

Admiralty jurisdiction is properly invoked because this court is being asked to determine the rights and liabilities of the parties under a mooring contract, which all authorities agree is a maritime contract. Second, the underlying claim is a maritime tort, as the Admiralty Extension Act, 46 U.S.C. § 740, extends admiralty jurisdiction to all cases of damage or injury to persons or property caused by a vessel on navigable water, even though the damage is consummated on land. Finally, assuming *arguendo* that the negligence claim is not a maritime tort, this court may hear the claim under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Respectfully submitted
By his attorney

THOMAS M. BOND, #546649
The Kaplan/Bond Group
Boston Fish Pier
West Building, Suite 304
P. O. Box 1404
Boston, MA 02205-1404
(617) 261-0080

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each party by mail (by hand) on 8/16/04