UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-11420-PBS

MARK BRODLEY,  )
    Plaintiff,  )
    )
    )
vs.  )
    )
MASHPEE NECK MARINA, INC.,  )
    Defendant.  )

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.     **INTRODUCTION**

Mark Broadley's ankle was shattered, requiring the installation of plates and screws, when it became wedged between floating docks at Mashpee Neck Marina, Inc. (hereafter "Mashpee"), where his boat was moored. Citing an exculpatory clause in the wharfage contract, Mashpee asserts that Broadley has contractually agreed to waive all causes of action. Consequently, Mashpee has denied liability. Broadley submits that the case law in the First Circuit is crystal-clear: EXCULPATORY CLAUSES are NOT ENFORCEABLE if they provide for a TOTAL ABSOLUTION OF LIABILITY. The undisputed facts and language of this contract show that the exculpatory language in the contract seeks to absolve Mashpee from liability from all claims and all types of damages. Under existing maritime precedent in the First Circuit, the clause is void and unenforceable.

1

II.     **PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

This statement of undisputed material facts is submitted pursuant to Local Rule 56.1:

1. In August of 2002 Mark Broadley leased a slip at the Mashpee Marina in Mashpee, Massachusetts. *See* Copy of Wharfage/Mooring Agreement, attached as Exhibit "A".

2. On August 25, 2002, Mr. Broadley alleges he was injured when his foot became stuck in a large gap between the main dock and a floating dock to which his boat was moored. The gap between the docks, normally two to three inches, was enlarged due to wave action from a passing boat.   As a result of his foot getting caught in the gap, Mr. Broadley suffered a comminuted fracture to his ankle which has required an open reduction/internal fixation, with insertion of a plate and cortical screws. He has suffered a permanent partial loss of function as a result of these injuries. *See* Affidavit of Mark Broadley, attached as Exhibit "B".

3. As a prerequisite to leasing the mooring, Broadley was required to sign a multi-page contract. This contract contained various clauses setting out the duties of the Marina and Mr. Broadley. Along with the duties of the parties, the contract contained a clause limiting the liability of the Marina for injuries suffered by Mr. Broadley to his person or property. Specifically, Paragraph 35 of the contract provides that:

> The OWNER [Mr. Broadley] warrants and convents that neither the OWNER, the Vessel, nor anyone in privity with either, will make any claims, demands, causes of action of any kind and nature, or obtain or enforce any judgments, executions or levies thereon, directly or indirectly (including subrogation matters), against MARINA, its officers, directors, agents, servants, or its employees, arising out of any damage, loss, personal injury or death suffered by them or those in privity with them or any  damage, loss, personal injury or death suffered by other owners, vessels, or persons in privity with them, for which third party claims might otherwise be raised against MARINA, etc.  The OWNER and Vessel agree and covenant that they will defend, indemnify and save MARINA harmless from any and all of such claims, demands, causes of action,

> judgments and executions, and the MARINA shall be entitled to responsible attorneys fees in the event of breach of the OWNER'S covenant hereunder.

*See* Exhibit "A", attached.

4. On January 30, 2004 Broadley sent a claim letter with a settlement demand package to Mashpee's liability insurance carrier.

5. On March 8, 2004 Mashpee denied Broadley's claim, alleging, among other things, that the exculpatory clause in the mooring agreement barred Broadley from recovery.

6. On June 21, 2004 Broadley filed suit against Mashpee under the general maritime law based upon negligence. The complaint also contained a count for declaratory relief under 28 U.S.C. Sec. 2201, asking the court to declare and determine the validity and effect, if any, of the exculpatory clause in the mooring agreement.

7. In lieu of filing an Answer, Mashpee moved to dismiss Broadley's complaint under Fed. R. Civ. P. 12(b)(1) for lack of federal subject matter jurisdiction; the motion alleged that the claim was NOT an admiralty claim.

8. On January 24, 2005 the court (Collings, MJ) denied Mashpee's motion to dismiss, and issued its Report and Recommendations. In the Report and Recommendations, the magistrate judge observed that the case "comes under admiralty jurisdiction because the contract between Marina and Broadley is a wharfage contract, one that without question is of a maritime nature and therefore within admiralty jurisdiction." Mashpee appealed pursuant to Fed. R. Civ. P. 72. This court affirmed.

### III. LAW AND ARGUMENT

#### A. Summary Judgment Standard

A motion for summary judgment should be granted where the record shows that "the pleadings ... on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party." Fajardo Shopping Center, S.E. v. Sun Alliance Ins. Co. of Puerto Rico, Inc., 167 F.3d 1, 7 (1st Cir. 1999). A fact is "material" if it has the "potential to affect the outcome of the suit." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

The party moving for summary judgment "bears the initial burden." Michelson v. Digital Financial Services, 167 F.3d 715, 720 (1st Cir. 1999). However, once this burden has been met, "the onus is on the nonmoving party to present facts that show a genuine issue for trial." Id. In order to determine whether summary judgment is correct, a court should "view all facts in the light most favorable to the nonmoving party." Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st Cir. 1990). The opposing party, however, "may not rest on mere allegations or denials of his pleading...." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995). In order to order to resist a motion for summary judgment, the nonmoving party must produce "definite, competent evidence" on which the nonmovant bears the ultimate burden of proof. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1996) (summary judgment should be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

### B. The Applicable Maritime Law

This is a case of admiralty jurisdiction. With admiralty jurisdiction comes the application of substantive admiralty law. East River Steamship Corp., et. al. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986). "Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." Id.

The issue of the validity of exculpatory or "red letter" clauses in admiralty was visited eight years ago by the First Circuit in the case of La Esperanza de P.R. v. Perez y Cia, 124 F.3d 10 (1st Cir. 1997). These clauses are ONLY ENFORCEABLE IF:

1. *They are expressed clearly in contracts entered into by parties of equal bargaining power;*

2. *They do not provide for a total absolution of liability and the prospective wrongdoer's potential liability is enough to deter negligence;*

3. *They do not seek to limit liability for gross negligence.*

Id., 124 F.3d at 19 (emphasis added). In La Esperanza, the court enforced a liability limitation clause in a repair contract entered into between a ship owner and a ship repair facility which precluded recovery only for loss of use and loss of profits.

Forty years earlier, the Supreme Court held that a towboat owner could not validly contract against all liability for his own negligent towage. Bisso v. Inland Waterways Corp., 349 U.S. 85 (1955). In Bisso, the Supreme Court forcefully disapproved of exculpatory clauses in such contracts in order to discourage negligence and to protect the owner of the tow from those who have the power to drive hard bargains. See also Fireman's Fund American Insurance Company v. Captain Fowler's Marina, Inc., , 343 F.

Supp. 347 (D. Mass. 1971)(exculpatory clause in contract between marina and yacht owner invalid for violating Article 7 of the Uniform Commercial Code).

### C. The Subject Clause Violates Applicable Maritime Law

The exculpatory clause in Mashpee's wharfage contract seeks to shield and completely absolve the marina from all causes of action, of every type and description. As such, it is not enforceable.

The clause prohibits the vessel owner from making "any claims, demands, causes of action of any kind and nature." *See* Mooring Contract at Page 7, Paragraph 35, Line 1,2., attached. The clause also prohibits the vessel owner from obtaining or enforcing any judgments, executions or levies against the marina or any of its employees. *Id.* at Lines 2, 3. It also seeks to preclude recovery for "any damage, los, personal injury or death . . ." *Id.* at Line 5. The clause also includes an indemnification and "hold harmless" provision, which includes a duty to defend and to pay attorney's fees.

It is not possible to draft language which would more completely insulate and immunize a party from liability and damages. Under the law of this Circuit set forth in La Esperanza, *supra*, and the Supreme Court in Bisso, the clause is therefore against public policy and unenforceable.

### CONCLUSION

The facts are not in dispute. Mashpee's wharfage contract contains a provision whereby it seeks to exonerate itself from liability for all types of claims and damages. The applicable maritime law prohibits this kind of exculpatory clause. For this reason, this court should strike this clause, and declare and determine that it is of no force and effect.

Respectfully submitted,<br>
by his attorney,<br>
<br>
_____<br>
THOMAS M. BOND, ESQ.<br>
**THE KAPLAN/BOND GROUP**<br>
88 Black Falcon Avenue<br>
Suite 301<br>
Boston, MA 02210<br>
(617) 261-0080<br>
B.B.O. #: 546649

Dated: 5-31-05