# EXHIBIT A

Case 1:04-cv-11420-PBS	Document 28-3	Filed 05/31/2005	Page 1 of 11



Mail: 100 Falmouth Rd./Rte. 28,   21 Frog Pond Close, Mashpee, MA 02649   Tel: (508) 477-6020
Mashpee, MA 02649   Fax (508) 477-5817

October 28, 2002

Dear Marina Applicant,

I would like to thank you and your family for a great first season! I'm sure that you feel as I do that this boating season was much too short. Fall is here, there is a nip in the air and it is now time to turn our thoughts to next spring.

I have enclosed a 2003 renewal application. Please notice that the initial deposit is due by November 30, 2002 and the balance due in full by March 31, 2003. Of course you are always free to pay the full amount any time before the due date. Please make checks payable to Mashpee Neck Marina and send to 100 Falmouth Road, Mashpee, MA 02649. The places where your initials or signature and dates are required are highlighted. Your application has a LOA indicated based on our actual measurement. Any change from this application length can result in the cancellation of your dockage agreement at the sole discretion of Mashpee neck Marina

Again, thank you for an enjoyable boating season and I hope you and your loved ones have a safe and happy holiday.

Sincerely,

Nelson Brace
General Manager

P.S. 2003 rates are unchanged from 2002!

P.P.S. Remember that although Mashpee Neck Marina is closed for the season, I can always be reached by either a voice message left at the Marina at 508-477-6020 or at Bosun's Marine at 508-477-4626. Bosun's Marine is open year round Mon. thru Sat., 8:00 A.M. to 5:00 P.M.

cc: Tim Leedham, President

*Sales and Service Exclusively by Bosun's Marine*

# Mashpee Neck Marina Inc.

Location: 21 Frog Pond Close, Mashpee, MA   Mail: 100 Falmouth Road, Mashpee, MA 02649
Phone: (508) 477-6020   Fax: (508) 477-5817

## 2003 DOCKAGE APPLICATION and CONTRACT
CONTRACT SEASON: MAY 1, 2003 - OCT. 15, 2003

| VESSEL NAME | VESSEL OWNER'S NAME |
|---|---|
| LOGICAL | MARK BROADLEY |
| WINTER MAIL: STREET ADDRESS | SUMMER MAIL: STREET ADDRESS |
| 248 Wheeler Rd. | |
| CITY | CITY |
| Mashpee | SAME |
| STATE   ZIP | STATE   ZIP |
| MA   02649 | |
| WINTER HOME PHONE NUMBER | SUMMER PHONE NUMBER |
| 508-477-8595 | |
| CELL PHONE NUMBER | IGNITION KEY # _____ (ENG. 1)   CABIN KEY # |
| 508-937-7756 | IGNITION KEY # _____ (ENG. 2)   ALARM/KEY # |
| WORK PHONE NUMBER | BOAT MFG. | LOA | BEAM | YEAR |
| 781-818-6772 | LARSON | 21' | 8' | 2001 |
| FAX NUMBER | ENGINE MFG. | SINGLE | TWIN | HP/SIZE |
|  | VOLVO | X | | |
| E-MAIL ADDRESS: | STYLE OF ENGINE(S)  O/B   I/O X   I/B | ENGINE 1 SERIAL # |
| MBROADLEY@TBCC.com | | ENGINE 2 SERIAL # |
| NOTES: ASSIGNED SLIP # 9 FOR 2003. | | |

THE 2003 DOCKAGE FEES ARE - $3,500.00 FLAT RATE FOR THE FIRST 20' AND $145.00/FT THERE OVER INCLUDING SWIM PLATFORMS OR EXTENSIONS. INITIAL DEPOSIT OF $1500.00 IS PAYABLE BY NOVEMBER 30, 2002 WITH THE BLANCE PAYABLE AND DUE IN FULL BY MARCH 31, 2003. VESSEL CAN BE PLACED IN THE ASSIGNED SLIP ON OR AFTER MAY 1ST AND MUST BE REMOVED BY OWNER OR HAVE ARRANGEMENTS WITH MASHPEE NECK MARINA FOR ITS REMOVAL PRIOR TO OCTOBER 15, 2003. NOTE: PLEASE MAKE CHECK PAYABLE TO MASHPEE NECK MARINA.

$3645.00   INITIAL DEPOSIT: $1,500.00   DATE & PAYMENT RECEIVED: _____

TERMS: NET CASH   BALANCE DUE: $2145.00   DATE & PAYMENT RECEIVED: _____

MASHPEE NECK MARINA INC. AGREES, UPON SIGNED ACCEPTANCE BELOW BY MASHPEE NECK MARINA INC., TO PROVIDE DOCKAGE FOR THE OWNER'S AFORE DESCRIBED VESSEL (HEREINAFTER CALLED VESSEL) FROM MAY 1, 2003 THROUGH OCTOBER 15, 2003, SUBJECT TO TERMS AND CONDITIONS OF THIS AGREEMENT AS SET FORTH ON THIS PAGE AND ON THE FOLLOWING SUPPLEMENTARY PAGES, WHICH ARE STANDARD PRINTED CONTRACT TERMS AND CONDITIONS THAT ARE INCORPORATED HEREIN FOR ALL PURPOSES AS IF SET FORTH ABOVE THE SIGNATURE OF THE PARTIES.

IN ADDITION TO THE PAGES OF PRINTED TEXT, IF THE PARTIES HAVE MADE ANY ADDITIONAL TERMS AND CONDITIONS OR MODIFICATIONS TO THE BASIC CONTRACT TEXT, THEIR TERMS, CONDITIONS AND/OR MODIFICATIONS, IF ANY, APPEAR IN WRITING ON ADDENDUM PAGES, SIGNED BY BOTH PARTIES. ADDITIONAL TERMS, CONDITIONS AND MODIFICATIONS, AS AFORESAID, SHALL ONLY BE EFFECTIVE IF SUBSCRIBED BY THE PARTIES; AND WHERE SO SUBSRCIBED, THEY SHALL BE FULLY INCORPORATED HEREIN AND SHALL PREVAIL OVER THE PRINTED TERMS AND CONDITIONS IN THE EVENT OF ANY AMBIGUITY OR INCONSISTENCIES WHICH APPEAR.

OWNER ACKNOWLEDGES RECEIPT OF THE ATTACHMENT, "DOCKAGE/MOORING RULES AND REGULATIONS." OWNER AGREES WITH THE TERMS AND CONDITIONS CONTAINED IN THE ATTACHMENT AND FURTHER AGREES THAT SAID ATTACHMENT IS PART OF THIS AGREEMENT.

RECEIPT DATE: _____   OWNER'S INITIALS: _____

| VESSEL OWNER: (PRINTED) | MASHPEE NECK MARINA INC. |
|---|---|
| BY: AUTHORIZED SIGNATURE | BY: AUTHORIZED SIGNATURE |
| DATE: | DATE |

2003

# MASHPEE NECK MARINA INC.

## DOCKAGE / MOORING CONTRACT
## RULES AND REGULATIONS

LOCATION:  21 Frog Pond Close
Mashpee, MA 02649
Phone: (508) 477-6020
Fax: (508) 477-5817

MAIL:  100 Falmouth Road
Mashpee, MA 02649
Phone: (508) 477-4626
Fax: (508) 477-1379

1. This contract is by and between MASHPEE NECK MARINA INC. / BOSUN'S MARINE INC. (both hereinafter called MARINA) and the described vessel (hereinafter called Vessel), represented by the Vessel owner, (hereinafter called OWNER). The parties agree that all oral or written representations, expressed or implied, on the subject of this contract have been incorporated into this written agreement, and that no other additional or different representations, terms, or contract conditions are applicable to this agreement. The parties further agree that this agreement shall not be modified or altered or amended or suspended in any way, except upon the basis of a writing signed by both parties.

2. The OWNER agrees that this contract is not assignable to any other vessel owner (including any purchaser of the Vessel during the term of this agreement), and that this contract is not assignable to any other vessel (including any other vessel of the same OWNER). The MARINA may, if it so chooses, allow assignment of this agreement subject to such changes as may be required by MARINA, but MARINA shall not be obligated to do so, regardless of the apparent advantages to the MARINA. No assignment shall be effective unless agreed to in writing by the MARINA in advance. The OWNER covenants and agrees that the OWNER, the Vessel, and those in privity with either of them, will comply with all the terms and conditions of this agreement and with all Rules and Regulations of the Marina, and will also comply and conform to the laws, regulations and rules of the Town of Mashpee and the Commonwealth of Massachusetts, as and to the extent that they may be applicable.

3. By this contract, the MARINA agrees to permit OWNER to berth and dock or moor his above named and described Vessel at Mashpee Neck Marina, for the period of time above-indicated, subject to the terms and conditions of this agreement. The Vessel is and shall be maintained in a safe and seaworthy condition by the OWNER, and shall not be a source of any environmental pollution which violates the standards of the Town of Mashpee or the Commonwealth of Massachusetts, from time to time in effect, whichever standard shall be the most restrictive. In event that the OWNER or other authorized person is unavailable, or is available but refuses to act, and if the Vessel is in danger of sinking, causing any hazard to navigation, becoming a fire, explosion or pollution hazard, or of causing damage to MARINA's facilities, by reason of any unsafe or unseaworthy condition of the Vessel while it is at MARINA's facilities, the OWNER authorizes MARINA to take reasonable and appropriate actions, at the OWNER's sole risk and expense to abate, mitigate and otherwise deal with the apparent danger and to protect MARINA's facilities and other vessels using them or being stored there, as well as to protect the general public and private property and vessels using Shoestring and Popponesett Bays and its environs. The OWNER agrees to be bound by MARINA's actions and to be fully and solely responsible for all expenses incurred thereof, including overtime wages of MARINA's employees employed for the purpose. The OWNER agrees further that MARINA shall have the authority, pursuant to this paragraph, to do all things and to take all steps to reduce the hazards and dangers that in MARINA's judgment appear to be present or foreseeable. Not withstanding the above, nothing herein shall be construed to

1

create any duty, obligation or responsibility, to act on the part of the MARINA; and nothing herein shall be construed to create any liability on the part of MARINA for failing to act in such circumstances; and nothing herein shall be construed to create any exception or waiver of the general conditions, restriction, waivers, exonerations, ext. set forth herein in favor of MARINA.

4. The OWNER agrees that MARINA shall not be responsible for any damage or loss which occurs to the Vessel (including but not limited to losses or damage arising out of failure of electric power or related equipment or arising out of acts of God, or force majeure or arising out of any other acts or occurrences of any and every kind) from cause beyond the immediate direct control of MARINA. Damage or loss which occurs as a result of the action or negligence of other vessel owner or business visitors or guests on the premises of MARINA shall not under any circumstances be attributed or imputed to MARINA. Furthermore, in addition to the foregoing, MARINA shall not be liable for extreme weather damage, whether by icing, storms, lightening, winds, hail, flood high or low tides, wake or wave damage, or fire or explosion or other damages to the vessel.

5. The OWNER warrants and covenants that, at the inception of this contract and at all times (including holdovers) during the term and any agreed extensions thereof, while the Vessel is being readied for hauling from the water, while it is being hauled from the water, and during the period that it is on land in inside or outside storage, and while the Vessel is being returned to the water at the end of land storage, and while the Vessel is back in the water ready for the OWNER at the end of this contract, the Vessel shall at all times be and shall be maintained in a safe, seaworthy and fit condition for the purposes of storage and all handling connected therewith, and the Vessel's trailer, if furnished by the OWNER, as furnished shall at all times be a strong, safe structurally sound trailer, fit for the purpose of hauling, moving, holding and storing the Vessel pursuant to this contract.

6. Unless specifically described above as being included, this storage contract shall not include any tender, dinghy, runabout, of any style, size or material of manufacture, normally belonging to the Vessel. MARINA shall be entitled to make such extra charges or requirements pertaining to such tender, dinghy, etc., as it deems necessary, before accepting it for storage hereunder.

7. It is agreed and stipulated that the dockage / mooring included in this contract does not include any specific type of watchman, police guard or security guard services, other than the Town of Mashpee's usual police and fire department services supplied to the community at large. The OWNER agrees that MARINA shall not be liable to the OWNER or the Vessel, or to those in privity with either of them, by reason of any intrusion, theft, vandalism, arson or other criminal acts of any kind or degree on or about the Vessel, whether by land or by water.

8. The OWNER covenants that he will place his Vessel only in the place assigned to and will allow no vessel except the above-named Vessel to occupy the mooring, berth or dock space allocated to it. In the event that the OWNER places or allows his Vessel to be placed where it is not assigned, or allows any other vessel to use said assigned space or mooring or to raft on to his Vessel, the OWNER and his Vessel will be liable for triple the posted labor rate to remove the Vessel and place it in its assigned dockage / mooring.

9. The OWNER covenants and agrees that at the end of the term here of, he will remove or cause to be removed the Vessel from its assigned berth or dock space in a careful, seamanlike manner, leaving all facilities and utilities, including all shore connections and MARINA supplied devices, in good order and condition, reasonable wear and tear only excepted.

10. The OWNER warrants and covenants that, at the inception of this contract and all times during the contract period, while the Vessel uses or occupies its assigned or any temporary berths, dock spaces, moorings, anchorages or other facilities of the MARINA, the Vessel shall be operated in a careful, safe manner so as not to cause damage to the MARINA's facilities or to any other vessels, and shall not constitute or be a public or private nuisance or any interference with the peaceful enjoyment of MARINA facilities by others. The OWNER hereby authorizes the MARINA, acting through the Dock Master, Harbor Master, Fire or Police Department, or any other appropriate officials or agents, to take reasonable and appropriate actions at the OWNER's expense, including boarding the Vessel and allowing law enforcement officers aboard, to abate, mitigate or otherwise deal with any danger which is apparent, in order to protect the MARINA's facilities and other vessels thereat, as well as to protect the general public, and private property at Shoestring and Popponesett Bays which might be affected thereby. The OWNER shall be bound by the actions of the MARINA and shall be fully responsible for all expenses, including overtime wages of MARINA's employees, connected therewith. The MARINA shall be authorized hereunder to

2

remove the Vessel from the waters for such repairs and services as are required to make the vessel safe and seaworthy so that it may be returned to its assigned mooring, berth or dock space. The MARINA's determinations as to what should be done and where it shall be done shall be binding on the OWNER and the Vessel.

11. In the event that the Vessel and / or those aboard are, in the MARINA's judgment, either a public or private nuisance or unreasonably interfere with the peaceful enjoyment of the MARINA facilities by others, the MARINA may terminate this contract for cause and expel the Vessel forthwith. In the event that the Vessel shall break free from its mooring or berth or dock space, it shall be presumed between the parties hereto that the Vessel was improperly secured and the OWNER and Vessel shall be responsible to the MARINA for all MARINA damage resulting.

12. The OWNER warrants and covenants that at the inception of this contract and at all times during the contract period, while the Vessel uses or occupies any facilities of the MARINA, the Vessel shall be covered by adequate Hull Insurance in and amount equal to at least eighty percent (80%) of its current market value, and shall be covered also by usual forms of protection and indemnity insurance for all non-collision forms of damage caused by the Vessel or those aboard in the amount of at least $1,000,000.000 per person and per incident, protecting the OWNER and the MARINA against claims, demands, and suits and judgments in said policy amounts for claim arising within the coverage of said policies. The OWNER also warrants and covenants that at all times during the non-boating season and/or while the Vessel is laid up or stored on MARINA property that a standard "Port Risk" or "Lay-Up" policy shall be in full force and effect. All such insurance shall be written by marine insurance companies duly qualified to do business as insurance companies in Massachusetts, and said policies shall provide that the MARINA shall be entitled to at least thirty (30) days notice prior to any cancellation thereof. All insurance covering said Vessel shall contain provisions which deny to the insurer any rights or subrogation against the MARINA and shall provide that the MARINA shall not be barred from making claim against said policies by reason of being an otherwise covered party under said insurance, to the extent that the Vessel shall cause damage to facilities or persons at said MARINA.

13. The OWNER warrants and covenants that at all times while the Vessel is at, near, or is using the facilities of the MARINA, or other local facilities, the Vessel shall not have aboard any dangerous devices, appliances or materials, whether in solid, liquid or gaseous form, unless they are U.S. Coast Guard or other appropriate government agency, or Underwriters Laboratories or equivalent, approved in respect to the use being made of them.

14. The OWNER warrants and covenants that at all times no barbecue grill, hibachi or other open flame devices, appliances, devices or tools shall be operated in the open on the Vessel or on the docks or adjacent land areas, and only approved appliances and devices and tools shall be operated within the enclosed spaces of the Vessel.

15. The OWNER warrants and agrees to keep MARINA and its docks free of tackle, dock boxes, gear and other obstructions.

16. The OWNER warrants and agrees not to carry fuel or to self-fuel Vessel in any manner at MARINA other than by use of the MARINA fuel dock and fueling equipment and by any attendant of the MARINA.

17. The OWNER warrants and agrees that all dogs in their company will be leashed at all times at MARINA and OWNER will clean up any and all waste or mess of any pet or guest's pet while at MARINA.

18. The OWNER agrees that the MARINA reserves the right to rent slips to transients when not occupied by Vessel / OWNER. OWNER agrees to notify MARINA office when he expects to leave overnight and when he intends to return.

19. The OWNER warrants and agrees to be limited to one parked vehicle for himself, family and guests while at MARINA and agrees to park only in MARINA and not on Frog Pond Close or adjacent roads. MARINA agrees to provide ample parking space and one parking pass for all MARINA tenants. Any and all guest parking is at the discretion of MARINA, which MARINA will not unduly deny. The OWNER further agrees not to park campers, mobile homes, trailers of any kind or commercially DOT licensed trucks in MARINA.

20. The OWNER warrants and agrees not to swim, dive, fish, clean fish, or throw or dump garbage, refuse or debris from any vessel, dock, or land at MARINA and not to discharge toilets, portable toilets into the waters of Shoestring and or Popponessett Bays. MARINA agrees to provide sanitary portable toilet houses and a dumpster for OWNER and guest use.

21. The OWNER agrees to provide MARINA with a duplicate set of all keys required to enter and operate Vessel.

22. During the lease period, the MARINA, as part of its contract, agree to supply water to the assigned berth or dock space.

23. The OWNER stipulates and agrees that, unless he personally in writing in advance notifies the MARINA otherwise, the MARINA shall be entitled to rely on the apparent authority of anyone in possession or apparent charge of the Vessel, and to accept and act in reliance upon orders or requests by such persons for services, supplies, work, labor and other materials, of any kind, for the benefit of the Vessel. Ordinarily, such requests or orders shall be placed with the MARINA's General or Service Manager or at the MARINA's offices. All invoices shall be due and payable at the time rendered, and MARINA shall have the option of requiring payment in full before the Vessel is allowed to leave MARINA's facilities. MARINA reserves and shall have the right to retain possession and control of the Vessel, its engines, equipment, gear and appurtenances, and its official documents, without process of law; with the right to hold the Vessel on land in inside or outside storage, without returning it to the water, and the right to haul the Vessel from wet storage into dry storage out of the water at the sole expense of the OWNER and Vessel, and MARINA shall not be obligated to restore the Vessel to the water until paid in cash or the equivalent thereof. In the event that the Vessel has been hauled from wet storage onto land for the purpose of holding it until payment has been received, the cost of hauling, storage and returning the Vessel to the water shall be an expense of the OWNER of the Vessel, and MARINA shall not be obligated to restore the Vessel to the water until paid in advance therefore. The OWNER and MARINA agree and stipulate that if the Vessel leaves the MARINA's facilities, with or without MARINA's consent, prior to full payment of all amounts currently due, MARINA shall not lose any of its rights to payment, to any liens, under state or federal (including federal maritime) laws against the Vessel, etc., or to regain possession (with or without process of law) of the Vessel and to hold it again thereafter until paid in full. No release of possession of the Vessel by MARINA shall be construed as, or operate to create, a waiver or surrender of any rights or remedies hereunder by MARINA. The OWNER further covenants and agrees that a service charge shall be payable on any and all unpaid balances due from time to time hereunder, at the rate of one and a half percent (1.5%) per month on outstanding balances, commencing from the fifteenth (15th) day after the date of the invoice or statement rendered. Such service charge shall be protected and secured by said liens. The OWNER further agrees that in the event that the MARINA shall make action to collect any balances due hereunder, including suits to enforce liens against the Vessel, a reasonable attorney's fee and related expenses of said attorney shall be assessable as part of MARINA's damages in addition to balances due to account principal and service charges, regardless of whether any lawsuit is filed by said attorney.

24. LIMITED WARRANTY TO APPLY- The OWNER and MARINA agree that by reason of the nature of a saltwater harbor environment and the attributes of marina and marine services operations, MARINA cannot anticipate or predict when, where or how specific causes will arise to disrupt service, cause parts failures, servicing difficulties, defects in materials and breakdowns in equipment functions. The OWNER and the MARINA further stipulate that by reason of the nature of a salt water environment and salt water harbor used by both pleasure and commercial watercraft, the MARINA cannot anticipate where or how specific events and causes (including but not limited to weather, such as storms) will arise to disrupt service, destroy MARINA facilities, cause breakdowns and destroy equipment and materials and cause parts failures. It is also stipulated that when remedial action, including general and specific maintenance, repairs, and services, are required or ordered, the MARINA cannot anticipate or guarantee that remedial action will be able to be carried out within the time and expense parameters estimated. The OWNER and the MARINA therefore agree that the MARINA shall not be liable to the OWNER, the Vessel or to those in privities with them, for any loss or diminution of services, water, mooring or dock facilities, navigable channels or depths in local harbors and waterways, or for any other loss, damage, disruption, or services or use of MARINA facilities for any reason, including but not limited to acts of God, fire, explosions, civil commotions, vandalism, strikes, lockouts, emergencies, local or regional disasters of any kind or third party actions, regardless of the nature of duration thereof. The MARINA shall not be obligated to make any refunds to the OWNER as a result thereof. More specifically, MARINA cannot know about, anticipate, or predict the existence or evolution of latent conditions aboard any vessel, and its facilities which may be or become an imminent or actual hazard that threatens the vessel or any other vessels and property at MARINA's premises. The OWNER and MARINA agree that there is at all times a significant risk that a real hazard will materialize from an unknown and unforeseeable latent condition aboard some vessel at the premises and that there is no reasonable way that MARINA can assume the responsibility of investigating in advance to discover such conditions.

25. The MARINA reserves the right not to renew this contract. It is the MARINA's policy to allow renewals of its contracts from year to year by those who have occupied berths, dock space and moorings, but this policy is always subject to change or termination at any time where it appears useful or appropriate for the MARINA to do so. The OWNER and Vessel

specifically disclaim any right, title or property interest of any kind in future renewals of this contract, or in any specific method of providing for renewals of these contracts. Further, the MARINA reserves the right to move or reassign OWNER and Vessel in occupied berths, dock space and moorings at any time, for any reason, within MARINA during the contract period.

26. MARINA shall have the right to terminate this contract for cause, upon reasonable notice in writing to the OWNER. Cause shall include, but shall not be limited to, the breach of any term, condition, covenant or restriction herein contained. Reasonable notice shall depend on circumstances, and may be dispensed with in advance where an emergency exists and where immediate action appears to be required, in MARINA's judgment. Where such immediate action is required, in MARINA's judgment, MARINA may move the Vessel from its assigned place or temporary place to any appropriate alternate location, in order to deal with the danger that appears to exist; MARINA shall notify the OWNER as soon as possible thereafter.

27. It is hereby stipulated and agreed that the OWNER may directly or indirectly supply his own work, labor, parts, components and materials in respect to the maintenance, repairs, and services for the Vessel, while in the water at the MARINA's facilities; provided, however, that the OWNER shall first, in all such instances, notify the MARINA of his intention to supply the same for the benefit of the Vessel, and shall first supply the MARINA with a certificate of insurance covering personal injury and property damage claims, and other risks usually covered by the insurance policies and (except in the case where owner personally is to perform such labor) in the policy limits normally carried by the MARINA. In each case, as each person other than the MARINA's personnel arrives for work at the premises of the MARINA, he or they shall report to the offices of the MARINA and present a certificate in acceptable form from the insurance carrier that they are then covered by the full amount of insurance required hereunder by a properly licensed and qualified company, and each outside workman, independent contractor, employee, etc., (but not the OWNER himself), shall in advance pay a daily $50.00 fee for proportionate share of the MARINA's overhead that is fairly allocable to the MARINA's facilities that are being used by such outside workers. Unless such certificate of insurance is presented and unless such daily fee is paid in advance, the MARINA shall have the right to deny access to its premises and to deny the right to do any work, or to provide any services to said Vessel there. The insurance as required by the MARINA for the OWNER to personally work on the Vessel shall be at the policy limits reasonably less than required for the outside serviceman, mechanics, labor, or other services. Reasonably less policy limits shall be determined on an individual basis by the MARINA in relation to the amount of risk to be created by the OWNER of the Vessel to other vessels in the MARINA, its facilities, and environs. Outside contractors shall provide certificates of insurance for workman's compensation equivalent to that required by the Longshoreman's Act. Outside contractors shall also demonstrate that they have met the OSHA hazard communications standard and in conjunction with it, the Massachusetts Right-To-Know training. The outside contractor shall further warrant that he will cause all hazardous or toxic waste to be removed from the MARINA by a licensed transporter for such waste.

28. The MARINA facilities shall not be used for solicitation, advertising, or any other business purposes, either from the Vessel or ashore, except by the MARINA or its permitees. The OWNER may, however, place a simple "For Sale" sign on the Vessel in order to sell it, provided that the sign shall be of a size, style and form which is acceptable to the MARINA. As a courtesy, the MARINA will supply an approved type of "For Sale" sign to the OWNER for such purpose, which sign shall be returnable when no longer needed. The OWNER agrees that the MARINA cannot assume the risks connected with allowing outside yacht brokers to board vessels at its facilities on the pretext of showing and demonstrating such vessels to prospective buyers, where MARINA has no reasonable way to identify such brokers, or to determine the scope of their authorization, or prevent damage or losses to the boarded vessel or to those nearby as a result of such activities. Therefore, the OWNER agrees that if the OWNER contracts with an outside yacht broker for the sale of the Vessel, the OWNER shall either be present when such outside yacht broker brings prospective buyers to see and board the Vessel and shall be responsible for the activities of such outside yacht broker and prospective buyer while at the facilities of the MARINA, or the OWNER will in writing notify the MARINA that the said outside yacht broker is entitled to act for him in his absence, and in such instance the said outside yacht broker shall always first report to the offices of the MARINA when bringing prospective buyers to see the Vessel without the owner present, and the MARINA shall always provide a representative of the MARINA to accompany such outside yacht broker to the Vessel and be in attendance while the Vessel is being exhibited to the prospective buyer and until said outside yacht broker concludes his business and departs from the premises of the MARINA. It is understood and agreed that the MARINA shall charge an hourly fee to said outside broker, payable in advance, for the services of providing a representative of the MARINA at such times. Such fees shall not be related to the commission earned by the said outside yacht broker, and shall not be conditional upon whether a sale results from the supervised activity. The OWNER also agrees that if he represents himself in the selling of the Vessel he or she shall be

present and accompany any and all prospective buyers at all times while the Vessel is being exhibited and until the prospective buyer concludes his business and departs from the premises of the MARINA.

29. It is hereby stipulated and agreed that the provisions of this agreement pertaining to work, labor, and materials supplied in respect to maintenance, repairs and services for the Vessel and other Vessels at MARINA's facilities, and the provisions of this agreement pertaining to the prohibition of solicitation, advertising and business purposes being conducted by anyone except the MARINA or its permittees, and the provisions of this agreement pertaining to yacht brokerage in connection with sales activities carried on while Vessel is located at premises of MARINA, are all primarily intended as risk avoidance measures by MARINA. MARINA cannot undertake to determine in advance the abilities, skills, honesty, integrity, insurance coverage and the business identity of each outside craftsman or alleged craftsman who purports to do work on vessels at MARINA's premises, nor can MARINA take the risk that those who hold themselves out to be outside craftsman and authorized to board the OWNER's Vessel, may actually be criminals or unauthorized persons. MARINA cannot take the risk that actually authorized outside craftsman will conduct themselves negligently and cause extensive damage to other vessels and the MARINA's facilities in a manner which is not covered by MARINA's insurance or will cause an increase in premiums or cancellation of insurance. Furthermore, MARINA cannot undertake to care for and protect the OWNER's Vessel or to provide proper and satisfactory work, labor and materials in respect to said Vessel where the OWNER supplies some of the parts or materials and MARINA cannot determine whether those parts or materials are defective in any way, since such defects themselves may serve as catalysts for other damage or problems to arise while not in themselves causing any direct apparent problems (e.g., galvanic action caused by a defective paint or by a defective part or component). Furthermore, MARINA cannot undertake to provide general oversight and protection of activities on its premises if business activities are conducted which are intended to attract business visitors who are unknown to the OWNER and to the MARINA, who may board the OWNER's Vessel for an alleged business purpose which causes damage or loss or even the theft of the Vessel. In similar manner, MARINA cannot assume the risks connected with allowing outside yacht brokers to board any vessels at its facilities on the pretext of showing and demonstrating the vessels to prospective buyers where MARINA has no reasonable way to identify such brokers, or determine the scope of their authorization, or to prevent damage or losses to the boarded Vessel or to those nearby as a result of such activities. The provisions of this agreement, therefore, are intended to protect MARINA in such matters giving MARINA control of such matters within its premises. Nothing herein shall preclude the OWNER from removing his Vessel to any other place for the purposes described herein or to have them performed elsewhere by anyone, including yacht brokerage. Nothing herein shall prevent the OWNER on a case by case basis, by requesting permission of MARINA to make an exception to any of the terms and conditions herein described, upon the grounds that the activities to be expected are minimal and do not increase risks for the MARINA, but MARINA shall not be bound to grant such requests if it feels in any way that its concerns for risk avoidance may be involved. The granting of an exception in any one instance shall not create any presumption or right to a similar exception in any other instance. To the extent, in any instance, that any provision of this agreement may have the appearance, except for the grounds of risk avoidance, of a possible restraint of trade or other antitrust violation, the parties hereby stipulate and agree that the primary purpose of said provisions is risk avoidance on the part of the MARINA based upon the understanding of the OWNER that the alternative would be for MARINA to shift the economic impact of such risks by charging prohibitively high prices for its services. Since the OWNER has the freedom to buy the same services, labor or materials from any other services, at prices which are not significantly different from that of MARINA, the OWNER at arm's length freely chooses to agree to such risk avoidance terms in order to minimize the risks of MARINA and to achieve the corresponding satisfactory price for the general services and benefits purchased from MARINA.

30. It is agreed that the contract amount payable directly and indirectly hereunder by the OWNER would necessarily be greater if MARINA were required to assume more risks and liabilities than are enumerated hereunder, if MARINA were required to give up benefit of a number of restrictions, conditions, waivers and exonerations, enumerated herein. By accepting the entire agreement as written, the OWNER stipulates and warrants that he has done so in order to enable MARINA to make the contract charges stated above, rather than higher charges and fees. It is agreed that there is this valuable and special consideration for the specific restrictions, terms, conditions, waivers and exonerations which favor MARINA hereunder, and that they are both fair and reasonable under the circumstances, and that no inequities will result if they are enforced in a favor of the MARINA.

31. HURRICANE- The OWNER and MARINA stipulate that MARINA shall not be liable for loss, damage, third party damage or loss to property or person in the event of acts of God, storms, floods, high winds, gales or hurricanes. The OWNER further agrees to evacuate the property of the MARINA together with his vessel, since the OWNER understands that no such facility can guarantee/ warranty safety in abnormal weather, conditions. (e.g. flood tide, gales, winds, high waves). It shall

6

be the OWNER'S responsibility to remove the Vessel, or in a timely manner instruct the MARINA to haul it without liability to the MARINA and at its normal rates for equipment, labor, storage and / or mooring. OWNER shall bear total responsibility for all damage to and caused by Vessel in these circumstances. If OWNER does not cause Vessel to be removed, it is stipulated that MARINA may do so, at full cost to OWNER, but with no responsibility on its part or on the part of the MARINA's insurance underwriter. OWNER stipulates that Vessel contain at all times sufficient ground tackle for hurricane conditions. The OWNER further agrees that his refusal to remove his Vessel from the MARINA in hurricane conditions will immediately void all leases and the OWNER will not enter or reenter the MARINA thereafter except under the pain of trespass.

32. The OWNER stipulates for himself, the Vessel, and for those persons in privity with him, that wherever this agreement requires him or the Vessel or those in privity with him to assume risk, in full or part, or to give up a right of action of any kind against or with respect to MARINA, the OWNER shall arrange and provide insurance coverage for the benefit of those assuming the risk or giving up the right of action or the OWNER shall become a self insurer of such risk and of any losses or claims thus given up, without recourse against MARINA directly or indirectly. In respect to such insurance coverage, it is agreed that the OWNER shall defend, indemnify and save MARINA harmless from all liability arising out of claims, demands, causes of action, suits, judgments and executions, on the part of the OWNER, the Vessel, and those in privity with them, or any other persons or vessels directly or indirectly in violation of this agreement. It is stipulated that the parties have deliberately negotiated and do intend a definite shifting of risks and waiver and release of liability specifically allocating burdens and benefits unequally between them, as a matter of free contact, based on their evaluation or equities and economic factors pertaining to them.

33. The OWNER stipulates that wherever this contract requires him, the Vessel, or those in privity with them, to assume a risk or liability, in full or in part, or denies him, the Vessel, or those in privity with them, any right of action against the MARINA, its agents, or employees, it is because the parties deliberately intend that there shall be a shifting of risks and benefits and all allocation of rights and liabilities between the OWNER and MARINA, by mutual agreement. It is agreed that if the MARINA were to assume more or different risks and liabilities than are innumerate in this contract, or if there were fewer or different conditions and restrictions, etc., herein, the MARINA would necessarily have to increase substantially the charges made against the OWNER and restrict the rental of the MARINA berths to a limited number of vessels. By accepting this contract in accordance with its terms, the OWNER has opted for a lower rather than higher rates and for broader scope of MARINA use in order to include his Vessel among the classes to which the MARINA is available. The OWNER, therefore, stipulates that there is thus valuable and useful consideration for the specific restrictions, conditions, waivers, exonerations, etc., in favor of the MARINA hereunder, and that the same are fair and reasonable and will not cause inequity or hardship if they are enforced against the OWNER, the Vessel, or against those in privity with them.

34. Nothing herein shall preclude the OWNER from making claim or bringing suit against any other vessel or person, including other vessels and their owner's at MARINA, for any loss or damages caused by such other vessel or its owner, provided that the OWNER shall not make the MARINA a party to such litigation without its expressed consent in writing. Nothing herein shall preclude any other owner or vessel of MARINA from making claim or bringing suit against the OWNER and Vessel, or those in privity with them, for any loss or damage caused by the OWNER, the Vessel, or those in privity with them.

35. The OWNER warrants and covenants that neither the OWNER, the Vessel, nor anyone in privity with either, will make any claims, demands, causes of action of any kind and nature, or obtain or enforce any judgments, executions or levies thereon, directly or indirectly (including subrogation-matters), against MARINA, its officers, directors, agents, servants, or its employees, arising out of any damage, loss, personal injury or death suffered by them or those in privity with them or any damage, loss, personal injury or death suffered by other vessels owners, vessels, or persons in privity with them, for which third party claims might otherwise be raised against MARINA, etc. The OWNER and Vessel agree and covenant that they will defend, indemnify and save MARINA harmless from any and all of such claims, demands, causes of action, judgments and executions, and the MARINA shall be entitled to responsible attorneys fees in the event of breach of the OWNER'S covenant hereunder.

36. The parties specifically stipulate that if any term, condition, rule or regulation under this agreement is as a matter of law unenforceable as written, it shall be treated as having the effect intended but only to the extent which is permissible by law. To the extent that any term, condition, rule or regulation cannot be modified so as to be made enforceable, it shall be deemed to be separable and severable from the rest of the agreement and shall not affect the validity or enforceability of the rest of

the agreement. All such terms shall be construed broadly to conform to the facts of this agreement. OWNER agrees to abide by any other posted rules and regulations available at MARINA'S office. OWNER agrees to pay in full all reasonable legal defense, legal costs, court costs, all costs to the MARINA in MARINA's defense of a legal action brought against MARINA by OWNER in which judgment is rendered in favor of MARINA.

37. The person who has signed above as the OWNER hereby warrants and represents that he is in fact and in law the true OWNER of the Vessel, and that he has full power and right to enter into this contract for himself and for the Vessel, and that there are no restrictions of any kind upon him or the Vessel which limit or restrict his right and power to bind himself and the Vessel to each and every term and condition of this contract. If the OWNER named herein is other than the person who has signed above, the person who signed above hereby warrants and represents that he is in fact and law duly authorized in all respects to act for the OWNER or OWNERS of the Vessel, that his signature above in fact and in law will bind the OWNER and OWNERS of the Vessel and the Vessel itself, that any corporate seal affixed as OWNER's seal is in fact the OWNER's seal and was properly placed upon his contract, and that there are no restrictions of any kind upon the OWNER of the Vessel which limit or restrict his signature from binding the OWNER and the Vessel to each and every term and condition of this contract. The above signed person personally covenants and agrees to defend, indemnify and save Mashpee Neck Marina Inc. and Bosun's Marine Inc. harmless from any claims, demands, defenses, losses, causes of action, third party claims and causes of action, suits, judgments and any executions thereof arising from Mashpee Neck Marina Inc.'s reliance thereon.

- END -

8