UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11420 PBS

MARK BROADLEY,
    Plaintiff

VS.

MASHPEE NECK MARINA, INC.,
    Defendant

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION OF THE DEFENDANT, MASHPEE NECK MARINA, INC., TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

For the purposes of the Motion for Summary Judgment, the facts in this case are not disputed. Mark Broadley had prior to August 25, 2002 signed a dockage/mooring contract with the Mashpee Neck Marina, Inc. On August 25, 2002, Mark Broadley after being out with his boat docked same at Mashpee Neck Marina. Mark Broadley thereafter stepped onto a floating dock and claims that he injured his ankle on the floating dock. The floating dock was owned by Mashpee Neck Marina. Subsequently, Mark Broadley has filed this action claiming personal injury.

Paragraph 35 of the dockage/mooring contract clearly specifies that Mark Broadley has agreed not to bring suit against Mashpee Neck Marina, Inc. Further, Mark Broadley has agreed in paragraph 35 of the dockage/mooring contract that if anyone connected with Mark Broadley or his vessel were to bring suit against Mashpee Neck Marina, Inc. that Mark Broadley would indemnify and hold harmless Mashpee Neck Marina, Inc. Mark Broadley in his Motion for Partial Summary Judgment claims that Paragraph 35 of the dockage/mooring contract is an unenforceable "exculpatory" clause. Mashpee Neck Marina, Inc. in turn, relies for the purposes

1

of this motion on the exculpatory language of the dockage/mooring contract and seeks this court to enter judgment in its favor based on the agreement.

Exculpatory clauses are routinely enforced in admiralty law. "The circuits are in agreement that while exculpatory clauses were generally disfavored by admiralty courts, such clauses are routinely enforced today based on "the consideration that businessmen can bargain over which party is to bear the risk of damage and set the price accordingly, thus achieving a more rational distribution of risk and allocation or price then the law would otherwise allow." **Sandler v. Alexander Richardson Investments**, 334 F3d 7 12, 718 (8th Circuit 2003). *See* also, **La Esperanza de P.R., Inc. v. Perez Y. Cia de P.R., Inc.**, 124 F3d 10, 19 (1st Circuit 1997). Mark Broadley's Motion for Summary Judgment claims that the exculpatory clause in the dockage/mooring contract is impermissible based on the First Circuit holding in ***La Esperanza*** However, ***La Esperanza*** involved a situation far different from the dockage/mooring contract in this case. ***La Esperanza*** dealt with a ship repair contract. To date, the First Circuit has not addressed exculpatory clauses in the docking/mooring contract context. Moreover, the rationale underlying and supporting a limitation as far as exculpatory clauses in ship repair or towing contracts, the only areas where the exculpatory contracts are limited, does not apply in the dockage mooring or slip agreement context.

Courts that have reviewed docking, mooring or slip agreements have enforced exculpatory clauses even to the extent that the clause absolves the marina of all liability. These courts have looked at the First Circuit decision in ***La Esperanza*** as a limited decision restricted to situations such as towage and/or ship repair. *See*, **Sandler v. Alexander Richardson Investments**, 334 F3d 7 12, 718 (8th Circuit 2003). As the Eighth Circuit explained, the First Circuit decision in ***La Esperanza*** is based on the Supreme Court case of **Bisso v. Inland Water**

**Ways Corp.**, 349 US 85, 99 L. Ed. 911, 75 S. Ct. 629 (1955) which merely codified a long standing rule of admiralty that in the particular application of the towage business that exculpatory clauses were unenforceable. "The **Bisso** Court explained, "This rule [that released from negligent clauses and towage contracts are unenforceable] is merely a particular application to the towage business of a general rule long used by Court's and legislatures to prevent enforcement of release of negligence contracts in many relationships such as bailors and bailees, employers and employees, public service companies and their customers." **Sandler v. Alexander Richardson Investments**, at 717. "However, where the peculiarities of those types of relationships do not justify application of the doctrine, we uphold the strong public policy of recognizing parties liberty to contract and enforcing contras as written." **Sandler**, *Id*.

"The general rule of exculpatory agreements is that a party may agree to exempt another party from tort liability if that tort liability results from ordinary negligence." **CORBIN ON CONTRACTS**, §85.18  In the admiralty context, the United States Court of Appeals for the First Circuit has indicated that in a ship repair contract, exculpatory clauses may not absolve a person from all liability. However, the holding in *La Esperanza* is limited only to ship repair contracts. Outside of that, the United States Supreme Court has held in **Bisso v. Inland Water Ways Corp.**, that towage contracts similarly will not allow complete exculpatory language. The 8th Circuit Court of Appeals in **Sandler v. Alexander Richardson Investments** observed that ship repair contracts and towing contracts are far different from slip, dockage or mooring agreements. The court noted "A ship repairer who takes control of the vessel and enters an agreement to perform work on the vessel is in a much different situation than a marina that provides a dock to which numerous boat owners have access and dock their boats. Thus, we limit our holding that an exculpatory clause that absolves a marina from liability for its own

3

negligence is enforceable as long as the parties intent to do so is clear and the clause is not the result of overreaching . . . " , **Sandler v. Alexander Richardson Investments**, *Supra* at 719.

*La Esperanza* involved a dispute between a ship owner and a shipyard over repairs to a vessel. The question of an exculpatory clause comes up in *La Esperanza* only insofar as the shipyard's failure to complete hull replacement repairs constituted a breach of expressed and implied contractual obligations. It was in this limited context that the First Circuit addressed exculpatory clauses in admiralty. In cases much closer on point to the situation raised by Mark Broadley in the present lawsuit, courts have held that dockage/mooring or slip rental agreements are not unique such as are towage or ship repair contracts and that the parties ought to be allowed to mutually agree to and bargain for exculpatory language. For example, **In Re Weschler**, 121 F Supp 2d 404 (USDCT Del. 2000), a ship caught fire while docked. In the slip rental or dockage contract was exculpatory language. In the exculpatory language, the parties specifically mentioned and agreed that "The vessel owner is well aware that the consideration paid to [marina] for slip rental . . . is disproportionally small in comparison to the value of the vessel . . . and the vessel owner is well aware of the various types of risks that are involved and associated with slip rental, handling and other work . . ." **In Re Weschler** at 431. The agreement between Mark Broadley and Mashpee Neck Marina has similar evidence of the agreed upon allocation of risk and cost. In the dockage/mooring agreement signed by Mark Broadley, at paragraph 30 Mark Broadley acknowledged and specifically agreed that

> "It is agreed that the contract amount payable directly and indirectly hereunder by [Mark Broadley] would necessarily be greater if MARINA were required to assume more risks and liabilities than are enumerated hereunder, if MARINA were required to give up benefit of a number of restrictions, conditions, waivers and exonerations, enumerated herein. By accepting the entire agreement as written, [Mark Broadley] stipulates and warrants that he is done so in order to enable MARINA to make the contract charges stated above, rather than hirer charges and fees. It is agreed that there is this valuable and special consideration for the specific restrictions, terms, conditions, waivers and exonerations which favor MARINA hereunder, and that they are both fair and

4

> reasonable under the circumstances, and that no inequities will result if they are enforced in a favor of the MARINA."

As clearly shown by the dockage/mooring agreement, Mark Broadley and Mashpee Neck Marina understood that the marina was offering a discounted or lower price based on the entire contract including the various agreements and exonerations. There is no suggestion that the dockage or mooring contract in this case was the result of overreaching. Unlike a towage contract in which the United States Supreme Court noted that the boat being towed was at the complete mercy of the towing company or a ship repair contract such as in ***La Esperanza*** in which a party takes complete control of a vessel, the dockage and mooring agreement in this case was a strictly voluntary pursuit. Importantly, unlike in a ship repair context or in a towage situation, "Mark Broadley was free to decline defendant's services if [he] did not wish to assent to the terms of the waiver." *See*, **Olivelli v. Sappo Corporation, Inc.**, 225 F Supp 2d 109 (USDCT PR 2002 at 119). **Olivelli** involved an exculpatory clause in a contract for scuba diving instruction. Although the **Olivelli** case dealt with a case in admiralty, the District Court in Puerto Rico did not think that the scuba diving waiver was a maritime contract. Nevertheless, the analysis in the **Olivelli** is useful. As the District Court of Puerto Rico noted, the ***La Esperanza*** holding regarding exculpatory language was dicta and not part of the court's holding. In fact, the discussion of the exculpatory clause comes in the context of warranty obligations on the part of a ship repairer. As in the **Olivelli** case, Mark Broadley had the right and ability to take his boat elsewhere. He agreed to a contract wherein the Mashpee Neck Marina allowed the boat to be docked at a reduced price due to the considerations regarding allocation of burdens and responsibilities.

This court should follow the **Sandler** court's rationale regarding exculpatory language in docking or slip agreements. The argument that the First Circuit has already conclusively

5

addressed this issue is false and misreads **_La Esperanza_** which is limited to a very particular situation involving ship repairs and breach of warranty claims. In Mark Broadley's case, Broadley's docking of his boat for a reduced price is clearly a result of bargaining and negotiation to which the parties should be obligated to live up to their bargains. Consequently, the Marshpee Neck Marina, Inc.'s Motion for Summary Judgment should be allowed and the Motion for Summary Judgment on behalf of Mark Broadley should be denied.

        Respectfully submitted,

        /S/ JOHN H. BRUNO
        John H. Bruno II, Esquire
        B.B.O. No. 542098
        Masi & Bruno
        124 Long Pond Road
        Unit 11
        Plymouth, MA 02360
        (508)747-5277
        JBruno@Allmerica.com