# United States Court of Appeals
## For the First Circuit

No. 05-2822

MARK BROADLEY,

Plaintiff, Appellant,

v.

MASHPEE NECK MARINA, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Dyk,[*] Circuit Judges.

Thomas M. Bond with whom Matthew H. Snell and The Kaplan/Bond Group were on brief for appellant.
John H. Bruno, II with whom Masi & Bruno was on brief for appellee.

December 22, 2006

---

[*]Of the Federal Circuit, sitting by designation.

**BOUDIN, Chief Judge.** On August 25, 2002, Mark Broadley was injured at the Mashpee Neck Marina ("Marina") at Cape Cod when his foot became caught in a gap between the main dock and a floating dock where his vessel was moored. The gap between the docks is about two to three inches wide when the water is calm, but the wake of a passing boat can cause the docks to move and the gap to widen. Broadley fractured his ankle and was left with a permanent loss of function.

Broadley alleged that Marina's negligence caused the accident: the space between docks was a potential hazard that could have been mitigated either by using a flexible material to cover the gap or by tying the docks together more tightly. Marina denied liability, citing the boilerplate exculpatory clause of the contract for seasonal mooring between the parties. That clause read:

> The OWNER [Broadley] warrants and [covenants] that . . . the OWNER . . . will [not] make any claims, demands, causes of action of any kind and nature, or obtain or enforce any judgments, executions or levies thereon . . . against MARINA, its officers, directors, agents, servants, or its employees, arising out of any damage, loss, personal injury or death suffered by [him]. . . . The OWNER . . . agree[s] and covenant[s] that [he] will defend, indemnify and save MARINA harmless from any and all of such claims, demands, causes of action, judgments and executions, and the MARINA shall be entitled to responsible attorneys fees in the event of breach of the OWNER's covenant hereunder.

Marina claimed that this exculpatory clause precluded Broadley from bringing suit for personal injury due to Marina's

negligence. Broadley responded that under admiralty law, a party may limit but may not completely absolve itself from liability for ordinary negligence; and that the clause was over-broad and therefore unenforceable insofar as it absolved Marina of liability for gross negligence and intentional wrongdoing. Because of its connection to maritime activities, the clause is governed by federal admiralty law. S.C. State Ports Auth. v. Silver Anchor, S.A., 23 F.3d 842, 846 n.3 (4th Cir. 1994).

The district court issued summary judgment in Marina's favor, holding that the clause should be reformed to limit it to ordinary negligence. Broadley had conceded that Marina's negligence did not rise to the level of gross negligence, so as reformed the clause barred his claim. This appeal followed. We review grants of summary judgment de novo. Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).

Broadley's main argument on appeal is that, under admiralty law, a party may not completely absolve itself of liability for ordinary negligence; for support, Broadley cites the Supreme Court's decision in Bisso v. Inland Waterways Corp., 349 U.S. 85 (1955), and our own decision in La Esperanza de P.R., Inc. v. Perez Y Cia de P.R., Inc., 124 F.3d 10 (1st Cir. 1997).

Bisso could be read as laying down a flat rule, applicable to all cases, forbidding clauses that entirely exculpate

a party for its own simple negligence.[1] However, Bisso focused on towing contracts and the special threat of "monopolistic compulsions." 349 U.S. at 91. The Court also cited case law forbidding exculpatory clauses in common law relationships where unequal bargaining power is presumed (e.g., utilities and their customers). 349 U.S. at 90-91. Thus Bisso can easily be read as limited to relationships where unequal power is inherent or established.

Agreements to waive claims for mere negligence are generally enforceable at common law. See Keeton et al., Prosser & Keeton on Torts § 68, at 482-83 (5th ed. 1984). Qualifications exist---the relevant doctrines are unconscionability and contracts of adhesion--turning on factors like adequate disclosure, relative bargaining power and the like. 1-2 Farnsworth, Farnsworth on Contracts §§ 4.26, 4.28, 5.2 (3d ed. 2004). But an admiralty rule, flatly preventing parties from contracting away claims for simple negligence in all circumstances, would be surprising.

Since Bisso, decisions in other circuits have addressed this issue in admiralty cases but no consensus exists as to how Bisso should be read. Two circuits would allow a release from all

---

[1] The Court applied the "judicial rule, based on public policy, invalidating contracts releasing towers from all liability for their negligence," and noted that "[t]his rule is merely a particular application to the towage business of a general rule long used by courts and legislatures to prevent enforcement of release-from-negligence contracts." Bisso, 349 U.S. at 90.

liability for negligence (at least in the dockage context) and one circuit arguably would not.[2] Another circuit has upheld exculpatory clauses that limited but did not entirely preclude liability for negligence; but in our case the clause completely exculpates from such liability, so this last circuit's cases are distinguishable.[3]

As for this circuit, the main thrust of the language in La Esperanza was to uphold exculpatory clauses directed to mere negligence so long as "expressed clearly in contracts entered into freely by parties of equal bargaining power." The sentence ended with the phrase: "provided that the clause not provide for a total absolution of liability." 124 F.3d at 19. But this may simply mean (unexceptionally) that parties cannot contract out of gross negligence.

Nor did La Esperanza hold invalid a properly disclosed clause, not unfairly imposed, waiving all claims for all negligence. The decision upheld application of a clause barring recovery for lost profits or lost use of vessel caused by a

---

[2] Compare Sander v. Alexander Richardson Invs., 334 F.3d 712, 719 (8th Cir. 2003), and Morton v. Zidell Explorations, Inc., 695 F.2d 347, 350-51 (9th Cir. 1982), cert. denied, 460 U.S. 1039 (1983), with Edward Leasing Corp. v. Uhlig & Assocs., Inc., 785 F.2d 877, 888-89 (11th Cir. 1986).

[3] Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 410 (5th Cir.), cert. denied sub nom, 459 U.S. 1036 (1982); Alcoa S.S. Co. v. Charles Ferran & Co., 383 F.2d 46, 55 (5th Cir. 1967), cert. denied, 393 U.S. 836 (1968); see also Diesel "Repower", Inc. v. Islander Invs. Ltd., 271 F.3d 1318, 1325 (11th Cir. 2001).

shipyard's negligence. So La Esperanza's dicta, however read, cannot control the present case. See United States v. Barnes, 251 F.3d 251, 258 (1st Cir.), cert. denied, 534 U.S. 967 (2001). In our view, the better rule is that an exculpatory clause limited to barring liability for ordinary negligence would be valid, assuming it were not inflicted by a monopolist or one with greatly superior bargaining power.

Broadley does not claim that Marina had undue bargaining power--presumably because there are alternative marinas in the general area--but this is not the end of the inquiry. There is no doubt that the clause as written is vastly overbroad and against public policy insofar as it purports to absolve Marina of liability for gross negligence, recklessness and intentional wrongdoing.[4] Thus, the question remains whether a court should be willing to narrow the clause and apply it only to the extent that it excludes liability for simple negligence.

The district court said that it would "reform" the clause, narrowing it to apply only to negligence; but reformation is normally appropriate where the language somehow fails to express the actual intention of the parties and is conformed merely to reflect their actual intent or, where the contents have been

---

[4] Royal Ins. Co. v. Southwest Marine, 194 F.3d 1009, 1016 (9th Cir. 1999) (exculpatory clause in admiralty contract may not limit liability for gross negligence); La Esperanza, 124 F.3d at 19 (same); Prosser & Keeton on Torts § 68, at 484 (same in common law context).

fraudulently misrepresented by one party, to conform the contract to the terms conveyed to the defrauded party. See Restatement (Second) Contracts §§ 155, 166; 2 Farnsworth on Contracts § 7.5. Neither situation is present here.

The doctrine pertinent where a contract provision is unlawfully overbroad is that which permits a court to sever or divide provisions that are unlawful as written, retaining those provisions or applications of them that are permissible. 2 Farnsworth on Contracts § 5.8. State law is not uniform, but a modern version of the doctrine, as reflected in the Restatement (Second) of Contracts § 184 (emphasis added) provides:

> A court may treat only part of a term as unenforceable . . . if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing.

One of the illustrations makes clear that where the parties actually negotiated an overbroad exculpatory clause that clearly encompasses negligence, a good case can be made for narrowing it to apply only to negligence, id. § 184 illus. 4; but another comment, arguably more pertinent here, says that "[t]he fact that the [overbroad] term is contained in a standard form supplied by the dominant party argues against aiding him in this request." Id. § 184 cmt. b.

There is no finding in this case as to the good or bad faith of the marina owner. Quite possibly this was a form contract

-7-

of a kind often furnished by trade associations seeking to give their members every advantage. In all events, we will assume that there was no subjective bad faith by Marina. Instead, the question for us is whether the clause represents fair dealing so that a judicial narrowing is sound public policy.

The substantial overbreadth of the clause has two negative consequences. Obviously such a clause can discourage perfectly legitimate claims--*e.g.*, for gross negligence or deliberate wrongdoing--from ever being brought by the injured party. The injured slip-renter often has ample reason to hesitate about suing--time, uncertainty, expenses--especially where, as here, the contract provides for attorney's fees to Marina for breach of the agreement not to sue.

A second concern is that the clause never says that it exempts Marina from negligence. The language used, although broader, is also blander: there is no reference to fault; and, although the clause literally encompasses negligence, Sander, 334 F.3d at 716, it is less likely to convey an *effective* warning to the reader than would a clear and specific disclaimer of liability for *negligence*.

Finally, Marina does not suggest that there was actual negotiation about such terms. If the negligence issue had been the subject of actual bargaining and discussion, we might well have a different reaction; but this is evidently a typical case of

-8-

boilerplate. Boilerplate even in contracts of adhesion is not automatically unlawful; but it is a relevant consideration in deciding whether to rescue the contract from overbreadth. See, e.g., Richards v. Richards, 513 N.W.2d 118, 123 (Wis. 1994); Restatement (Second) Contracts § 184 cmt. b.

The case law is not very helpful in providing a controlling answer. There are two admiralty cases in other circuits sharing our reading of Bisso that have narrowed such clauses;[5] but neither addresses specifically the considerations of concern to us. Cases applying state law are divided, with some courts narrowing such clauses and others declining to do so very much for the reasons we have already given.[6] We find the latter more persuasive.

The marina agreement in this case has, as part of the boilerplate, a severability clause. But the same public policy concerns we have described lead us to reject the application of this clause to rescue the overbroad exculpatory clause. Otherwise, the narrow and explicit language, which we think should be

---

[5]Sander, 334 F.3d at 716; Royal Ins. Co., 194 F.3d at 1014.

[6]Compare, e.g., In re Pacific Adventures, Inc., 27 F. Supp. 2d 1223, 1224-25 (D. Haw. 1998) (applying Hawaii law), and Richards, 513 N.W.2d at 122-23, with Harmon v. Mt. Hood Meadows, Ltd., 932 P.2d 92, 95-96 (Or. Ct. App. 1997), and Swartzentruber v. Wee-K Corp., 690 N.E.2d 941, 944-46 (Ohio Ct. App.), appeal denied, 678 N.E.2d 1231 (1997).

required, could be side-stepped by leaving the broad language in place and including the severability clause as a companion.

In declining to narrow the exculpatory clause, we rely on the extreme overbreadth of the clause and the plainness of its illegality, the boilerplate character of the contract and lack of specific negotiation, the absence of an explicit reference to negligence which would provide better warning, and the attorney's fees clause. Any competent lawyer could write a straightforward exclusion of liability for negligence that we would sustain.

Only some elements of this analysis were made by Broadley. In the district court a simple overbreadth argument was adverted to; in this court Broadley stresses lack of clarity. A litigant is not expected to guess just how a court will explain its result; but it would be easy enough for us to avoid the issue and to affirm on the ground that the overbreadth argument was not adequately developed and is therefore forfeit. United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990).

But the forfeiture doctrine is not an absolute limitation on judicial power but a prudential limitation subject to the reviewing court's discretion. Indeed, a court may, although rarely will, forgive a knowing waiver where extreme injustice would be done. United States v. La Guardia, 902 F.2d 1010, 1013 (1st Cir. 1990). Here, it is important that the validity issue be resolved

for the sake of future case law, and invalidity is the juster result.

The only concern where the court develops issues not adequately argued is that a party not apprised may have arguments against the court's reasoning. But in this instance an overbreadth claim as such was raised in the district court and we know what Marina said in response. Similarly, we are especially open in cases of this kind to petitions for rehearing and are ready to revise reasoning and result if this is warranted.

With that qualification, we _reverse_ the decision of the district court and _remand_ for further proceedings. No criticism of the very able district judge is intended; we are dealing with poorly developed and confusing admiralty law in aggravated circumstances, and the district court did not receive much help. Each side will bear its own costs on this appeal.

It is so ordered.